IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-ct-03058-BO

| | | |
|---|---|---|
| TONY MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on defendants' pending motion to dismiss [D.E. 27]. For the reasons discussed below, the court will grant the motion.

Background:

On March 23, 2018, Tony Murphy ("plaintiff"), an inmate at Federal Medical Center Butner ("FMC Butner") proceeding pro se and without prepayment of fees, filed this complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. [D.E. 1, 4, 9]. Plaintiff names as defendants: the United States of America; Warden J.C. Holland ("Holland"); Erica Johnson ("Johnson"); Nurse Middleton;[1] Lieutenant Perez ("Perez"); and a Jane Doe nurse ("Nurse Doe"). Compl. [D.E. 1] at 3–5. Plaintiff alleges violations of his Fifth and Eighth Amendment rights and the duties of the Bureau of Prisons ("BOP") outlined in 18 U.S.C. § 4042. [D.E. 1] at 6.

On June 26, 2019, defendants filed a motion to dismiss, see Mot. [D.E. 27], a memorandum in support [D.E. 28], and the declaration of defendant Johnson [D.E. 29]. Pursuant to Roseboro v.

---

[1] Plaintiff initially identified this defendant as "Nurse Milton," see [D.E. 1] at 3, but later informed the court that this defendant was properly identified as Nurse Middleton, see [D.E. 19].

Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 30]. On October 23, 2019, plaintiff filed a response in opposition to the motion to dismiss [D.E. 34].

Statement of Facts:

Plaintiff was assigned to work in the Safety Department as the Safety Inmate for Nursing Stations at FMC Butner. See Compl. Attach. [D.E. 1-1] at 2. On March 27, 2017, defendant Johnson ordered plaintiff to clean out a refrigerator in the Nurse's Station. Id. at 2. Plaintiff refused, claiming that he previously had received conflicting instructions not to handle staff food and beverages. Id. at 9. Defendant Johnson filed an incident report against plaintiff for refusing to obey her order. Id. at 2. This report later was withdrawn without disciplinary consequences. Id. at 9, 37.

On April 13, 2017, defendant Perez wrote a memorandum entitled "stalking behavior" noting that he had counseled plaintiff "concerning, what appeared to be, [plaintiff's] inappropriate behavior towards female staff in the Comfort Care Unit." Id. at 4. Defendant Perez: informed plaintiff that his actions "suggest stalking behavior"; ordered plaintiff "to immediately cease this behavior" and "not to hang around the unit when there is no work to be done"; and informed plaintiff "this type of behavior will not be tolerated," and that "any order given by a staff member is to be followed." Id.

Plaintiff's April 14, 2017, informal resolution contested the "stalking warning." Id. at 6 (alleging, "animosity started when I refused (justly) to clean the Nurse's refrigerator."). A response states that a supervisor observed plaintiff was not in the proper area for workers that have completed their duties, and that plaintiff was "reassigned off 5th floor to prevent any future problems." Id.

On April 26, 2017, plaintiff filed an administrative remedy request addressed to defendant Holland. Id. at 8–9. Plaintiff asserted that the stalking write-up constitutes retaliation because "the

2

'stalking incident' is tied to the 'not following a direct order' incident." Id. at 9. Plaintiff requested that defendant Holland conduct an investigation against defendant Johnson and the anonymous nurse that reported the stalking incident. Id. Plaintiff complained that the stalking charge "is slandering [plaintiff's] character" and led to extra stress that causes "undo hardship" due to his Multiple Sclerosis ("MS") condition. Id. On May 22, 2017, defendant Holland denied the administrative remedy request and found there was no evidence that plaintiff was the victim of retaliation or unprofessional staff conduct. Id. at 10. Holland further informed plaintiff that the April 13, 2017, warning for "inappropriate behavior toward female staff on Comfort Care Unit" was in accordance with BOP "Program Statement 5270.09, Inmate Discipline Program, page 9, Stalking." Id.

Plaintiff filed a claim for damage, injury, or death with the BOP Mid-Atlantic Region Office alleging "Breach of Duty, Gross Negligence, Libel, Misrepresentation, Deliberate Indifference, Cruel and Unusual Punishment Action of Dept [sic]." Id. at 27. Plaintiff alleged he was denied procedural due process as to the loss of his prison job. Id. at 28, ¶2. Plaintiff further contended that defendants Holland, Johnson, Middleton, Perez, and others acted "with deliberate indifference and reckless disregard of the duties of the Bureau of Prisons under 18 U.S.C. § 4042." Id. at 28, ¶9. The claim was denied on February 14, 2018. Id. at 31. Plaintiff then filed the instant action.

## Plaintiff's Arguments:

Plaintiff's complaint asserts:

"The willful misconduct of an employee establishes the proximate cause of injury by an[d] through negligent acts or omissions of [the BOP] and their agents while acting within the scope of their employment and/or the result of their deliberate indifference invoked by libel and fraudulent misrepresentation deems intentional acts deriving from a reason to know and a duty to act to prevent Plaintiff being subjected to a serious risk of harm to his liberty interests ensuring health safety and care [sic]."

3

Compl. [D.E. 1] at 6–7. Plaintiff contends that the March 27, 2017, incident report was "a feigned action . . . predicated on the prohibited act of . . . refusing to obey an order of any staff member." Id. at 7. Plaintiff further contends that the April 13, 2017, accusation of stalking raised in the counseling session with defendant Perez was retaliatory and led to plaintiff's removal from his work-assignment detail. Id. Plaintiff seeks compensatory and punitive damages. Id. at 9.

In his response to the motion to dismiss, plaintiff again alleges that FMC Butner employees violated his Eighth Amendment rights. See [D.E. 34] at 2. Plaintiff asserts that defendant Johnson "intentionally inflicted mental stress, harassment, retaliation, with resultant physical harm affecting [plaintiff's] Multiple Sclerosis (MS)." Id. Plaintiff ponders whether defendant Johnson's "unprofessional conduct" as to the refrigerator incident voids her immunity and inquires, "[i]s it possible Nurse Johnson further elicited her co-worker, whose name remains [anonymous] . . . to assist her in her scheme of retaliation against [plaintiff]?" Id. at 6. Plaintiff further disagrees that his actions fit the definition of "stalking" and asserts that, when "this 'confidential warning' leaked out [, plaintiff] was jeered by other inmates, correctional officers, and he no longer trusted any nurses[.]" Id. at 7. Plaintiff argues that defendant Johnson "violated [plaintiff's] rights by the intentional infliction of emotional stress causing physical injury to his MS by worsening his condition and purposefully harassing [plaintiff] with unlawful discrimination [sic]." Id. at 9.

## Standard of Review:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction–a court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Id. at 104; see also Evans v. B.F. Perkins

4

Co., 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists."). When considering a motion to dismiss for lack of subject-matter jurisdiction, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted). The court also may consider evidence outside the pleadings without converting the motion into one for summary judgment. See id. (citation omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). "To survive a [Rule 12(b)(6)] motion to dismiss, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level'—that is, the complaint must contain 'enough facts to state a claim for relief that is plausible on its face.'" King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Twombly, 550 U.S. at 555, 570). When considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See Iqbal, 556 U.S. at 679 (noting that bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim). Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). The court, nevertheless, presumes that the factual allegations in the complaint are true and construes these allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v.

5

Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). Although the court must liberally construe pro se filings, see Erickson, 551 U.S. at 94; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (noting pro se complaints are held to a less stringent standard than those drafted by an attorney), all complaints still must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

Discussion:

Plaintiff's argument, distilled, is that, after plaintiff refused to clean the refrigerator, defendants retaliated by giving plaintiff a "stalking warning" that caused removal from his work-assignment detail, harm to his reputation, and the worsening of his MS condition.

1. Plaintiff's Bivens claims

The Bivens decision "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Iqbal, 556 U.S. at 675 (citation and internal quotation marks omitted). To state a Bivens claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 676. Here, plaintiff altogether fails to personally connect defendant nurses Middleton and Doe to any alleged violation of plaintiff's constitutional rights. See id.

Defendant Johnson declares that, during the incidents described in the complaint, she was a commissioned officer with the United States Public Health Service ("PHS") working for the BOP as a registered nurse at FMC Butner, and that her purported interactions with plaintiff fell within the scope of her official capacity as a PHS employee. See Johnson Decl. [D.E. 29] at ¶¶ 1–4. As a PHS officer, defendant Johnson is absolutely immune in a Bivens action "for actions arising out of the performance of medical or related functions within the scope of [her] employment." Hui v.

6

Castaneda, 559 U.S. 799, 806 (2010). Thus, to the extent plaintiff's allegations against defendant Johnson are premised on her performance of her PHS position, the FTCA provides the only remedy. See 42 U.S.C. § 233(a); see also Hui, 559 U.S. at 811 (noting scope-of-employment certification by the Attorney General is not "a prerequisite to immunity under § 233(a)" and that a PHS officer instead may provide proof that she was acting within the scope of her employment with "a declaration affirming that the defendant was a PHS official during the relevant time period.").

The court now considers plaintiff's claims that the alleged retaliation involved defendant Perez and fell outside the scope of defendant Johnson's employment. See [D.E. 1] at 7; [D.E. 34] at 6. To support a retaliation claim, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Here, plaintiff had no constitutional right to refuse defendant Johnson's order to clean the refrigerator or to avoid defendant Perez's warning for "stalking behavior." See id. at 74 (noting "claims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution."); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting retaliation claims generally are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct.") (quotation omitted)); see also Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Moreover, because plaintiff lacks a constitutional right to a prison job, plaintiff's loss of that job cannot itself violate the constitution. See, e.g., O'Bar v. Pinion, 953 F.2d 74, 85–86 (4th Cir. 1991) (removing inmate from work release program did not

violate inmate's constitutional rights). Plaintiff's inquiry whether it is "possible" that defendant Johnson "elicited her co-worker. . . to assist her in her scheme of retaliation," [D.E. 34] at 7, is wholly speculative, see Twombly, 550 U.S. at 555 (noting "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Thus, even presuming that Johnson is not altogether immune to plaintiff's Bivens claims, plaintiff still fails to state a retaliation claim against Johnson or any other defendant. See Cochran, 73 F.3d at 1317; Adams, 40 F.3d at 74; cf. Gregg-El v. Doe, 746 F. App'x 274, 275 (4th Cir. 2019) (per curiam) (unpublished) (remanding to determine if a plaintiff was denied prison job in retaliation for exercising constitutionally protected right).

To the extent plaintiff instead alleges that defendant Holland or others violated his Fifth Amendment rights when plaintiff received a "stalking warning" and was removed from his prison work assignment, the Amendment provides, in relevant part: "No person shall be . . . deprived of life, liberty, property without due process of law." U.S. CONST. amend. V. A prisoner's protected liberty interest arises only when a disciplinary proceeding imposes a punishment that either alters "the duration of [an inmate's] sentence," or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

Here, plaintiff does not allege a change in the duration of his sentence, or the imposition of an atypical hardship. Cf. id. The loss of a prison job does not implicate a constitutionally protected liberty or property interest. See O'Bar, 953 F.2d at 85–86; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively."); Johnson v. Knable, 862 F.2d 314 (4th Cir.

1988) (noting "prison work assignments are matter within the discretion of prison official, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate"); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) ("[W]ork assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators," and do not implicate the due process clause); see also Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (finding a federal prisoner lacked either liberty or property interests in a prison work assignment); Lindsey v. Lee, No. 5:02-CT-255-H, 2002 WL 32332188, at *1 (E.D.N.C. May 23, 2002) ("The loss of a particular work assignment does not impose an atypical or significant hardship on an inmate where he has no constitutional right to a particular assignment" (citation omitted)). To the extent plaintiff instead alleges that defendant Holland violated plaintiff's constitutional rights by failing to investigate "fraudulent misrepresentation" by defendants Johnson or Perez, see Compl. [D.E. 1] at 6–7, plaintiff is incorrect, see, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))). Accordingly, plaintiff's due process claims fail.

The court now considers plaintiff's contention that defendants violated his Eighth Amendment rights. The Eighth Amendment "provides protection with respect to 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)

9

(quotation omitted). The first prong requires a prisoner to show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a prisoner to show that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted).

Here, plaintiff's claims are insufficiently substantially serious to satisfy the objective prong of the inquiry. See De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (noting only "extreme deprivations" – defined as a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of a conditions-of-confinement claim). Plaintiff also fails to colorably allege that defendants acted with a culpable state of mind, cf. Strickler, 989 F.2d at 1379, and his bald assertions that defendants were "deliberately indifferent" are mere "labels and conclusions" insufficient to state an Eighth-Amendment claim, Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, because plaintiff fails to state a Bivens claim against any defendant, dismissal is appropriate.

Alternatively, as government officials, defendants are entitled to qualified immunity from civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, because there is no showing that defendants' actions violated plaintiff's constitutional rights, defendants likewise are entitled to a finding of qualified immunity.

2. Plaintiff's FTCA claims

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, 569 U.S. 50, 51–52 (2013). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted). However, the United States may be held liable only to the extent that a "private person [] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009).

Here, plaintiff essentially argues that defendants' actions harmed his reputation through libel or slander. See Compl. [D.E. 1] at 6. Such claims are explicitly barred under 28 U.S.C. § 2680(h). See Talbert v. United States, 932 F.2d 1064, 1067 (4th Cir. 1991) (finding section 2680(h) bars claims "resound[ing] in the heartland of the tort of defamation," including claims premised upon purportedly untrue communication of statements about plaintiff made to third parties). Plaintiff also appears to raises a claim against defendant Johnson's premised on intentional infliction of emotional distress ("IIED"). See [D.E. 34] at 9. Although the FTCA does not explicitly bar IIED claims, because plaintiff's IIED claim stems from defendant Johnson's allegedly defamatory conduct, the court concludes that this IIED claim likewise falls under the section 2680(h) bar. Accord Armstrong v. Geithner, 610 F. Supp. 2d 66, 72 (D.D.C. 2009), aff'd, 608 F.3d 854 (D.C. Cir. 2010).

Although plaintiff vaguely asserts that the BOP "and their agents" committed "negligent acts or omissions," Compl. [D.E. 1] at 6, this bare legal conclusion falls well short of stating negligence

11

claim under North Carolina law. See Iqbal, 556 U.S. at 679; see also Lamm v. Bissette Realty, Inc., 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990) (noting a *prima facie* negligence claim requires the following elements: "defendants owed plaintiff a duty of care, defendants' conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury"). Because plaintiff fails to state claim under the FTCA, dismissal again is appropriate.

3. Plaintiff's state-law claims:

Finally, because the court grants defendants' motion to dismiss all plaintiff's federal causes of action, the court also declines to exercise supplemental jurisdiction over any asserted state-law claims. See 28 U.S.C. § 1367(c)(3) (granting district courts discretion to decline to exercises supplemental jurisdiction over a pendent state-law claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (courts have "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

Conclusion:

For the reasons discussed above, the court GRANTS the motion to dismiss [D.E. 27] and DIRECTS the clerk to close the case.

SO ORDERED. This 7 day of Feb. 2020.

TERRENCE W. BOYLE
Chief United States District Judge